UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

vs.                                           2:11-cr-114-FtM-29DNF

**DEBRA ROGGOW,**

_____

<u>COURT'S INSTRUCTIONS
TO THE JURY</u>

**Members of the Jury:**

DRAFT

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions - - what we call your deliberations.

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government.

You must follow the law as I explain it -- even if you do not agree with the law -- and you must follow all of my instructions as a whole.  You must not single out or disregard any of the Court's instructions on the law.

The indictment or formal charge against a defendant is not evidence of guilt.  The law presumes every defendant is innocent.  The Defendant does not have to prove her innocence or produce any evidence at all.  The Government must prove guilt beyond a reasonable doubt.  If it fails to do so, you must find the Defendant not guilty.

DRAFT

The Government's burden of proof is heavy, but it does not have to prove a Defendant's guilt beyond all <u>possible</u> doubt.  The Government's proof only has to exclude any "reasonable doubt" concerning the Defendant's guilt.

A "reasonable doubt" is a real doubt, based on your reason and common sense after you have carefully and impartially considered all the evidence in the case.

"Proof beyond a reasonable doubt" is proof so convincing that you would be willing to rely and act on it without

hesitation in the most important of your own affairs.  If you are convinced that the Defendant has been proved guilty beyond a reasonable doubt, say so.  If you are not convinced, say so.

As I said before, you must consider only the evidence that I have admitted in the case.  Evidence includes the testimony of witnesses and the exhibits admitted.  But, anything the lawyers say is not evidence and is not binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.  You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?
- Did the witness have a personal interest in the outcome of the case?
- Did the witness seem to have a good memory?
- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
- Did the witness appear to understand the questions clearly and answer them directly?
- Did the witness's testimony differ from other testimony or other evidence?
- Did the witness testify about events that occurred during a time when the witness was using medications or substances that may have impaired their memory?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something,

5

that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

A defendant has a right not to testify. But since the Defendant did testify, you should decide whether you believe the Defendant's testimony in the same way as that of any other witness.

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that does not mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

The Indictment charges ten separate crimes, called "counts," against the Defendant. Each count has a number. You will be given a copy of the Indictment to refer to during your deliberations.

Count One charges that on or between August 2000, through May 2009, in Lee County, Florida the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Hydromorphone, a Schedule II Controlled Substance, and Clonazepam, a Schedule IV Controlled Substance to patient Patricia Scott in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Two charges that on or between January 2002, through December 2010, in Lee County, Florida the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone and Percocet, Schedule II Controlled Substances, and Diazepam,

a Schedule IV Controlled Substance, to patient Jeff Giampolo in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Three charges that on or between May 2007, through January 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone, a Schedule II Controlled Substance, quantities of Hydrocodone, a Schedule III Controlled Substance, and Clonazepam, a Schedule IV Controlled Substance to patient Susan Helton in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)((C).

Count Four charges that on or between September 2009 through December 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone, a Schedule II Controlled Substance, and Hydrocodone, a Schedule III Controlled Substance to patient Charles Farabee in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Five charges that on or between January 2003, through December 2007, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of

8

Hydromorphone and Morphine, Schedule II Controlled Substances, to patient Lori Corrochano in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Six charges that on or between October 2005, through March 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone, a Schedule II Controlled Substance, to patient Robert Goldstein in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Seven charges that on or between November 2007, through March 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone, a Schedule II Controlled Substance, to patient Michelle Goldstein in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Eight charges that on or between January 2005, through February 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone

and Fentanyl, Schedule II Controlled Substances, to patient Elizabeth Izzo in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Nine charges that on or between February 2003, through March 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Oxycodone, Fentanyl, and Hydromorphone, Schedule II Controlled Substances, to patient Amy Amsberry in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Ten charges that on or between November 2004, through December 2010, in Lee County, Florida, the defendant Debra Roggow did knowingly act outside the scope of professional practice by dispensing quantities of Morphine, a Schedule II Controlled Substance, and Clonazepam, a Schedule IV Controlled Substance to patient Tony Brooks in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Title 21, United States Code, Section 841(a)(1) makes it a Federal crime or offense for a person to dispense a

**controlled substance except under certain circumstances. A person may dispense a controlled substance if the person is a "practitioner" who dispenses the controlled substance pursuant to a prescription issued for a legitimate medical purpose while the practitioner is acting in the usual course of professional practice. Otherwise, dispensing a controlled substance is unlawful.**

**The Defendant can be found guilty of the offenses of unlawfully dispensing controlled substances as charged in the Indictment only if all of the following facts are proved beyond a reasonable doubt:**

<u>**First**</u>: **That the Defendant is a "practitioner" as defined by federal law;**

<u>**Second**</u>: **That the Defendant dispensed the controlled substances named in the Indictment;**

<u>**Third**</u>: **That the Defendant dispensed the controlled substances knowingly; and**

<u>**Fourth**</u>: **That the Defendant dispensed the controlled substances either outside the usual course of professional medical practice or**

without a legitimate medical purpose.

A person is a "practitioner" within the meaning of the federal law if that person is lawfully licensed to practice medicine and is registered or otherwise permitted by the United States or the State of Florida to dispense controlled substances in the course of professional practice.

The following substances are "controlled substances" within the meaning of the law: morphine, fentanyl, hydrocodone, oxycodone, percocet, hydromorphone, clonazepam, and diazepam.

The term "dispense" means to deliver a controlled substance to an ultimate user by or pursuant to a lawful order of a practitioner, which includes a prescription by a physician.

The term "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident. Defendant is not on trial for medical malpractice, and is not charged with acting negligently with respect to the care of her patients.

To be a lawful order by a practitioner, a prescription for a controlled substance must be issued for a legitimate medical purpose and the practitioner must be acting in the usual course of professional practice. The Indictment does not assert that any of the prescriptions in this case were not issued for a legitimate medical purpose. Rather, the Indictment asserts that the prescriptions were issued by defendant while acting outside the usual course of professional practice.

The "usual course of professional medical practice" refers to the standard of medical practice and treatment generally recognized and accepted in the state of Florida. To determine the "usual course of professional medical practice" you may consider the totality of the circumstances, including evidence of accepted professional standards of care in effect at the time and expert testimony. In making a medical judgment concerning the right treatment for an individual patient, physicians have discretion to choose among a wide range of options. A physician's objectively reasonable good faith efforts to prescribe controlled substances for a patient's condition in compliance with the accepted standard

of professional medical practice in the state of Florida are not criminal.  A physician's prescriptions are the result of objectively reasonable good faith efforts if a reasonably well trained physician would believe the substances were being prescribed in compliance with Florida's accepted standard of professional medical practice.  On the other hand, the defendant's personal, subjective belief that she prescribed the controlled substances for a patient's condition in compliance with Florida's accepted standard of professional medical practice is not sufficient to show objective good faith.

It is defendant's position that at all times she acted in accordance with the standard of medical practice generally recognized and accepted in the state of Florida while treating her patients, or at least acted with objective good faith in prescribing controlled substances.  The burden of proof is not on the Defendant to prove objective good faith, since the Defendant has no burden to prove anything.  The Government must establish beyond a reasonable doubt that the Defendant acted outside the usual course of professional medical practice, as charged in the Indictment, and did not act in

objective good faith when prescribing the controlled substances.

You will see that the Indictment charges that a crime was committed "on or about" a certain date. The Government does not have to prove that the crime occurred on an exact date. The Government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged.

Each count of the Indictment charges a separate crime. You must consider each crime and the evidence relating to it separately. If you find the Defendant guilty or not guilty of one crime, that must not affect your verdict for any other crime.

I caution you that the Defendant is on trial only for the specific crimes charged in the Indictment. You are here to determine from the evidence in this case whether the Defendant is guilty or not guilty of those specific crimes.

**You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later.**

**Your verdict, whether guilty or not guilty, must be unanimous -- in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.**

**Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.**

**Remember that, in a very real way, you are judges -- judges of the facts. Your only interest is to seek the truth from the evidence in the case.**

**When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and will speak for you in court.**

**A verdict form has been prepared for your convenience.**

**[Explain verdict]**

**Take the verdict form with you to the jury room. When you have all agreed on the verdict, your foreperson must fill in the form, sign it, date it, and carry it. Then you will return it to the courtroom.**

**If you wish to communicate with me at any time, please write down your message or question and give it to the Court Security Officer. The Court Security Officer will bring it to me and I will respond as promptly as possible -- either in writing or by talking to you in the courtroom. But I caution you not to tell me how many jurors have voted one way or the other at that time.**